Mr. Smith. Good morning, Your Honors and Counsel. May it please the Court, I'm Michael Smith. I represent Jonathan Arnold. Mr. Arnold was the plaintiff in the District Court and he's the appellant here. The issue before the Court in this appeal is whether the District Court erred by granting summary judgment to the defendant, Leticia Villarreal, against Jonathan Arnold on his three fraud claims. More specifically, the question is whether the Court erred by granting summary judgment to Ms. Villarreal on the grounds that Mr. Arnold could not justifiably have relied on her representations to him regarding the marital status of the couple, first. Second, whether Mr. Arnold's fraud claims were barred by the three-year statute of limitations in California, on both of which grounds the District Court granted summary judgment without giving Mr. Arnold an opportunity to take discovery in the case, which discovery Mr. Arnold requested twice in response to the two motions for summary judgment. I'd like to focus the Court on Ms. Villarreal's decade-long practice of, at times, outrageous misrepresentations about the party's marital status. I don't know that you need to do that because, as I understand this claim, it's a claim about alleged representations about the legal validity of the marriage. And that's a question, that's a representation about the law or a representation of law, which is categorically not actionable under any fraud or deceit theory because no one can justifiably rely on misrepresentations or alleged representations of law. That's just black-letter tort law. I respectfully disagree, Your Honor. The question is whether there was a misrepresentation of domestic law and also whether there was a fiduciary relationship or confidential relationship between the parties. In both cases, a representation of law can be treated as a representation of fact, which is actionable in fraud. That issue was discussed in Miller v. Yokohama, which the parties briefed and which was addressed by the district court. The basis for the question of whether a representation of law is actionable is addressed, as I said, in the Miller case, which relies in part on AMJUR, the American Jurisprudence, and I think it's Section 97. It doesn't matter. This is hornbook, textbook, accepted law in every jurisdiction. So criticizing, or it sounds like you're about to criticize the source of this principle as being only AMJUR, but it's just black-letter law. It's in the restatements. It's in every state in the country. Representations of law are not actionable because no one can justifiably rely on them unless there's a fiduciary relationship like an attorney-client relationship. And there's not a fiduciary relationship here. That's just a frivolous argument. We have also asserted that there is both a fiduciary and confidential relationship between the parties. Your client can just as easily access the law as Ms. Villareal. The law is accessible to both of you, so he cannot justifiably rely on whatever she said about the legal validity of the marriage. And on that point, we understand, and I take your point, but the position that we have taken is that there is, in fact, a fiduciary and confidential relationship between the parties. There cannot be a fiduciary relationship here. There may be a special relationship between them, but not a legally recognized fiduciary relationship in this context. He could just as easily have looked up California law to determine what the failure to file the marriage license meant for the legal validity of the marriage. He could not rely on whatever she said. And frankly, as a matter of the factual record of this case, she told him that it wasn't valid. And they were advised, both of them, by the recorder of deeds, a recorder of records in California, that the license hadn't been filed and they needed to do it forthwith. They did receive a notice from the appropriate filing authority that they needed to file the license in order to perfect that. That's correct. Right. I mean, so your argument is in the teeth of the evidentiary record, but more importantly, it's just not cognizable as a fraud claim. I, again, respectfully disagree in relying in part upon the reasoning in Alliance Mortgage v. Rothwell, which we have cited and relied upon. That involves a third-party claim. This is not a third-party claim. This is a first-party claim. You can defraud a third party about the legal status of your marriage by representing it as a matter of fact. But this is a claim between the parties to the marriage. And, you know, both the putative husband and the putative wife can equally access the California Code or call a lawyer and find out what the consequences of the failure to file the marriage license are. I'd like to address your points in two ways, if I may. First, again, I'd like to suggest that, in fact, the standard is whether a fiduciary or confidential relationship exists between the parties. And I'd like to go through a little bit about the relationship between the parties. They participated in a wedding ceremony. None of that matters. None of that matters. As a matter of law, there isn't the kind of special relationship that the law recognizes as allowing actionable fraud claims under these circumstances. Well, on that point, I would again say... Your client couldn't put his head in the sand and accept her representations about the legal validity of the marriage. I don't believe that Mr. Arnold put his head in the sand. That's exactly what he was doing. There was one statement, and the defendant relies on a single statement from one year. She could have said absolutely nothing and just acted as if it was a legal marriage, which, as I understand it, is what your claim is. You want to disregard the statement she made about the marriage not being legally valid and rely on how she acted. But it was his duty to find out about the legal validity of the marriage, and he stuck his head in the sand. We don't actually argue that anyone should disregard the statement that she made in 2005. We do rely very heavily on her answer to the original complaint in this case, in which she admitted in 10 or 15 different paragraphs that she had held herself out at all times as his wife. And, in fact, she argued in her answer that her statements to that effect negated any invalidity of their marriage. And none of that matters under the law. There's no justifiable reliance on a representation of law. Your party is equally capable of accessing the relevant law. In that case, I see I have any rebuttal time. I'll take your points, Your Honor, and reserve any remaining time for rebuttal. Thank you. Thank you, Mr. Smith. Mr. Cummings. Robert Cummings for Ms. Villareal, Your Honor. Good morning. Judge Sykes, you've taken care of the case. You're dead right. But I would like to address our motion for sanctions. This case was frivolous from the outset. Judge Grady said that in 2010. He gave them a heads-up. Mr. Smith just said to you there's one statement. That's incorrect. It's as careless as what must have been the underlying effort by Mr. Arnold to figure out how he could be most vindictive when going after Ms. Villareal. There was more than one statement. He got the letter in December of 2004 saying the marriage license wasn't any good. She told him we're not married. He admits that. Actually, when they got the letter, they still had a few days to get it filed, right? But they just didn't. Nobody did it. Judge. Didn't the letter come with a few days left on the three months? It did indeed. And you know what's important about that, Judge? Here's what Mr. Arnold told the district court, what it tells this court. I am a very careful person. And I'm not one to permit important tasks to languish. That's this Ph.D. That's this expert in litigation matters. But beyond that, this very careful person who doesn't permit important tasks to languish, after he's told we're not married, he then says, well, let's get a second marriage license. Then he signs an affidavit. And in the affidavit, he says, I've never been married before. That's document 33-2 in the record. He signs this affidavit on August 18th, 2005. And the affidavit includes these words. We, the undersigned and unmarried man and unmarried woman, swear that the statements contained here are true. August of 2005. Judge Grady said this case was frivolous. That wasn't enough. Judge St. Eve said this case was frivolous. That wasn't enough. I filed a motion for summary disposition before this court. It was denied. And I respect that. But they persisted in this appeal. And there's no legitimate basis whatsoever for this appeal. Neither Judge Grady nor Judge St. Eve made any sort of error. And to say that there's one statement is to ignore the letter. It's to ignore his sworn statement that he wasn't married in August of 2005. But here's perhaps the coup de grace. Before he dreamed up this lawsuit in 2009, back in 2007 when he hadn't figured out yet how he was going to pursue his petty score settling as described by the district court, why did you pursue the second license, he was asked during a deposition in 2007? Here's his response. The question of whether there was a technical... There was a question in my mind, in my mind, as to whether or not there was technical completion of the marriage. That's sworn deposition testimony. The man is remarkably vindictive. He was asked another question. Did you ever tell Letitia that on August 18, 2005, three days before your daughter was born, that the party should apply for a second marriage license because you didn't want your child born as a bastard? I don't recall one way or another. That is remarkable. The undisputed facts in this case establish, we respectfully submit that the underlying case was frivolous as found by Judge Grady and as found by Judge St. Abe, that it was perpetrated as a part of a vindictive scheme and that this court most respectfully should find that this appeal is frivolous and grant appropriate relief. Thank you very much. Thank you, Mr. Cummings. Mr. Smith. Thank you. I'll just offer a very, very brief rebuttal. The question of whether the parties were married was clearly at issue or not at issue in 2006 when Ms. Villareal induced Mr. Arnold to give her a power of attorney, and when she borrowed hundreds of thousands of dollars for a mortgage loan and then executed a trustee's deed to purchase real property for hundreds of thousands of dollars, representing herself as his wife. We believe that that constituted an act of fraud by Ms. Villareal at that time and that irrespective of whatever the parties' individual duties or beliefs were, Ms. Villareal has represented on the record that shortly after the wedding ceremony, she knew that the parties were not married. Under those circumstances, it was a fraud for her to have executed those documents as his wife, to have borrowed hundreds of thousands of dollars that obligated him, and to have purchased real property as his wife. It's a fraud on the third-party lender. And a fraud that damaged his jury. Both clients, both sides are complicit in, but it doesn't give rise to a fraud claim as between the two parties committing the fraud on the third party. It is our position, respectfully, that it does, and for that reason in particular, most of all the reasons that we've discussed, we believe that the court should reverse and remand and that it should deny the motion for sanctions. Thank you for your attention. Thank you, Mr. Smith. Thank you, Mr. Cummings. The case is taken under advisement.